REMMINGTON ET AL., appellants, *v.* BAUDIT, respondent.

MINING LOCATION — *Annual work* — *House for miners.* — The annual work required by the act of May 10, 1872 (U. S. R. S. sec. 2324), to be performed in order to retain a mining claim must be done either within the claim, or, if off from it, as a necessary means of extracting the ore therefrom. The erection of a dwelling-house without the boundaries of the claim, for the convenience and shelter of miners, cannot be considered as a part of such annual work.

*Appeal from Second District, Deer Lodge County.*

THE opinion states the facts.

T. L. NAPTON, for the appellant.

WHITEHILL & KNOWLES, for the respondent.

WADE, C. J. This is an action in the nature of ejectment, in which the plaintiffs and appellants seek to recover the possession of the Elmira lode claim, situate in the Willow Creek mining district, Deer Lodge county. They claim title and right to possession since March, 1882, and allege that the defendant and respondent, on or about the

15th day of May, 1884, entered upon said claim, and commenced mining and working the same, and still continue so to do, to the great damage of the plaintiffs.

The defendant, in his answer, denies the allegations of the complaint, and alleges that the plaintiffs failed and neglected to perform or have performed for them, in the year 1883, $100 worth of work on the premises described in the complaint, and that they did not make $100 worth of improvements thereon for that year, whereby, and because of the failure of plaintiffs to represent said claim for the year 1883, as required by law, the same became again a part of the public domain, and subject to location as such; and was, on the 1st day of January, 1884, located by the defendant as the Little Emma lode mining claim, in accordance with law, and that he thereby became the owner and entitled to the possession of said claim.

The only question presented for our determination is, whether the evidence offered by the plaintiffs to prove that they had represented their claim, as the law requires, for the year 1883, ought to have been received for that purpose.

After the plaintiffs had introduced evidence tending to show a valid title to the Elmira lode claim, and the entry of defendant and ouster of plaintiffs, the defendant introduced evidence tending to prove a forfeiture of the Elmira claim by plaintiffs, in the year 1883, because of a failure to represent said claim for that year, and a relocation thereof by the defendant in 1884, as the Little Emma lode claim, by reason of such forfeiture. Thereupon the plaintiffs, by witness Remmington, offered to prove that he was one of the plaintiffs; that he contracted verbally with other parties to extract from said Elmira lode claim, in 1883, twenty-five tons of ore; that in obedience to and in compliance with said contract the said parties worked ten days in extracting ore from said claim for plaintiffs, in 1883, of the value of about $35; and, thereupon, plaintiffs having proved that there were no houses in the vicinity of said Elmira

lode claim, and that there was no place for himself or his hired man to live, accessible to said claim, he offered to prove that plaintiffs built, in 1883, a house, a miner's cabin, worth over the sum of $100, in which to live while working said Elmira claim; that said house was built for plaintiffs, and to be used while working said claim, and was situate about two hundred feet from the surface ground of said claim, and at the most convenient place from their works; that during the summer of 1883, after said house had been built, plaintiff Remmington, and Russell Yount and John Johns located another mining claim, upon which said house is situated, and lived in said house, and run a tunnel on said last claim some eighty feet; that in the fall of 1883 the plaintiff, Remmington, removed all the lumber used in building said house; that Yount and Johns were the parties who contracted with the plaintiff, Remmington, to extract said twenty-five tons of ore, and built said house for their use while extracting the same, and thereafter that the house was to belong to plaintiffs.

Thereupon the defendant objected to any proof of the value of said house as showing any representation of the Elmira lode claim, as it was not work done on the claim or improvements made during the year 1883. The objection was sustained, and this action of the court was assigned as error.

The act of congress of May 10, 1872, provides as follows: On each claim located after the 10th day of May, 1872, and until a patent has issued therefor, not less than $100 worth of work or labor shall be performed, or improvements made during each year. U. S. R. S. sec. 2324.

The house in question was not built on or within the boundaries of the Elmira lode claim. Undoubtedly, work done outside of a claim, if done for the purpose and as a means of taking out the ore, or prospecting or developing the claim, such as running tunnels, drifts, drains, or building flumes, or works necessary and proper for mining the claim, would be as available for holding the claim as if

done within its boundaries. But building a house or cabin is not one of the necessary means or instruments for extracting ore from a mine. Of course, miners, like everybody else, have to live in houses, but still, dwelling-houses are not properly considered part of the necessary machinery or works for running a mine. The purpose of requiring $100 worth of work or improvements on a mining claim each year is to so develop the mine as that a patent may issue for the claim. It is not the policy of the government to issue patents for the mineral lands until there has been a discovery, and sufficient work done upon the claim to demonstrate its value. Building a house off the claim does not develop the mine at all. If such kind of work or improvements off a claim were sufficient for the purposes of representation and patent, then the building of a house in a town or city, no matter how far away from the mine, if the miner had his meals and lodged there, might entitle him to hold his claim and to procure a patent therefor, before any work at all had been done on the claim, while the law declares that there shall be $500 worth of work or improvements on the claim before the patent may issue.

This house was used while other claims were being represented, and was afterwards taken down and rebuilt elsewhere. An attempt seemed to have been made to make this house a sort of traveling representation of mines wherever it went. If it could represent the Elmira claim it might have represented the others as well, and at the same time. If building that house was one representation, taking it down might have been another; and so by building, taking down, and rebuilding that house, the plaintiffs might have represented all the mines in that district, and this process might go on for years, until sufficient building and rebuilding had been done to entitle the party to a patent before a stroke of work had been performed on the claim. Such a doctrine will not answer. We hold that the work should be done on the claim, or if off from it, as a necessary means of extracting the ore from the

claim. It is necessary for miners to eat and sleep, and they have to have boots and clothes, but they have to do this, and to have these anyway, like everybody else; and it would not do to say that every time a miner bought a new suit of clothes, or a pair of rubber boots, or took a night's lodging, he was representing a mine for himself or somebody else.

A liberal construction should be given to the mining act of 1872, but it should not be so liberal as to authorize a claim to be held without representation, or a patent to be procured before any work has been done on the claim.

The judgment is affirmed, with costs.