[No. 18308.    Department Two.—September 26, 1894.]

## HAMILTON McCORMICK, Appellant, *v.* GEORGE W. BALDWIN, Jr., Respondent.

Mining Claims—Annual Work—Relocation.—Under section 2324 of the United States Revised Statutes a mining claim, upon which the requisite annual work has not been done, becomes subject to relocation, unless the prior locator resumes work thereon before the relocation is made.

Id.—Resumption of Work.—To "resume work," within the meaning of section 2324 of the United States Revised Statutes, is to actually begin work anew with a *bona fide* intention of prosecuting it as required by that section; and whether work done by a prior locator was with such intention is for the jury to determine.

Appeal from a judgment of the Superior Court of Nevada County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*J. M. Walling*, for Appellant.

*C. W. Kitts*, for Respondent.

McFarland, J.—This is an action of ejectment. The premises described in the complaint consist of certain quartz mining property called the Gracie Consolidated Quartz Mining Claims. They include three distinct mining locations or claims adjoining each other, called the "Big Blue" (or Gracie) on the east, the "Guernsey" in the center, and the "East Orleans" on the west. The defendant asserts title to certain quartz mining claims which conflict with and include portions of said "Guernsey" and "East Orleans" claimed by plaintiff. The verdict and judgment were for defendant; and from the judgment and order denying a new trial plaintiff appeals.

In the transcript and briefs many points touching mining law are made and suggested; but there is only one point which we deem it necessary to notice in detail, and that arises out of certain instructions of the court about the construction of the words "resume work" in section 2324 of the United States Revised Statutes.

The mining locations upon which appellant bases his right to the premises in controversy were made in the year 1885, and prior thereto. There is no pretense of evidence that he ever worked on the Guernsey or East Orleans; or that any work was ever done by him on the Big Blue prior to the year 1892. There is some evidence of some work done by appellant in a tunnel on the Big Blue in 1892; but from all the evidence in the case the jury must have found that if there was any work done on the Big Blue in 1892 it was entirely insufficient to hold the three claims under the United States statute, even though the work on the Big Blue could be applied to the other claims. But it was abundantly shown that the tunnel in the Big Blue in which appellant claimed to have worked in 1892 was of no use whatever in developing either of the other claims, and therefore could not be applied to the latter.

Respondent made his locations, which included parts of the Guernsey and East Orleans, in February and April, 1893; and the Guernsey and East Orleans were then clearly subject to relocation, unless appellant, after the expiration of the year 1892, had *resumed work* within the meaning of the statute before respondent made his locations. Upon this subject the appellant testified that "on the first day of January, 1893, plaintiff performed about three hours work on each of said three locations," and that on said day and the day following—January 2d—he dug a shaft on the Orleans about six feet deep. No more work was done by him afterwards. He contends that by these acts he had resumed work so as to invalidate any attempted hostile locations. Upon this subject the court gave several instructions, the substance of them being this: That a party cannot hold a mining claim for several years without doing in any year the work required, by simply going on it at the beginning of each year and doing a few hours work with no *bona fide* intent to comply with the statutory requirement as to the amount of work to be done. In the instruction No. 11 the word "and" is

inadvertently used before the word "unless"; but all the instructions taken together clearly showed to the jury what the court meant.   The latter part of instruction No. 11 may be taken as a fair sample of the instructions objected to by appellant, and is as follows: "Unless before the alleged location by the defendant of the ground in controversy the plaintiff had done some work with the *bona fide* intention of doing the balance of the requisite work during the year 1893.   It is against the policy of the law and a fraud against the government and the law to hold quartz claims by merely doing a few dollars' worth of work thereon at or near the beginning of the year next following the year on which claimant failed to do the necessary work, when such work is not commenced with the *bona fide* intention of being continued till the full amount is done.   Such labor so done is a mere pretense and sham, and will not prevent the relocation for want of necessary work."   This instruction and the other instructions given by the court upon the subject are, in our opinion, correct.   To "resume work" within the meaning of said section 2324 is to actually begin work anew with a *bona fide* intention of prosecuting it as required by said section.   Of course it was for the jury to determine from all the evidence in the case whether or not the facts brought the case within the principle of the instructions.   And under this view it is not necessary to examine the points made as to the validity of appellant's original locations, the validity of the old Stoddard claim of 1875 or the mesne conveyances thereof from Stoddard to Eastman, the contract between Eastman and Calvert, etc., or many other points made in the case.   There was no substantial defect in the locations of respondent.   We see nothing further in the case to be considered.

The judgment and order appealed from are affirmed.

DE HAVEN, J., and FITZGERALD, J., concurred.